United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TWITTER, INC.,<br><br>            Plaintiff,<br><br>       v.<br><br>VOIP-PAL.COM, INC.,<br><br>            Defendant. | Case No. 20-CV-02397-LHK<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 31 |

Plaintiff Twitter, Inc. ("Plaintiff") sues Defendant VoIP-Pal.com, Inc. ("Defendant") for a declaration of non-infringement and invalidity of U.S. Patent No. 10,218,606 ("the '606 patent"). Before the Court is Defendant's motion to dismiss Plaintiff's complaint. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES Defendant's motion to dismiss.

## I.     BACKGROUND

This case represents the latest chapter in a long dispute between the parties regarding whether Plaintiff infringes Defendant's patents, which relate to a system for routing internet-protocol communications. Below, the Court discusses in turn: (1) the parties; (2) Defendant's first set of lawsuits against Plaintiff, Apple, AT&T, and Verizon, originally filed in the District of

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

Nevada in 2016 ("the 2016 cases"); (3) Defendant's second set of lawsuits against Apple and Amazon, originally filed in the District of Nevada in 2018 ("the 2018 cases"); (4) Defendant's most recent lawsuits against Apple, AT&T, Verizon, Amazon, Facebook, and Google, filed in the Western District of Texas in April of 2020 ("the Texas cases"); and (5) the instant case, which was filed by Plaintiff in this Court in April of 2020.

### A. The Parties

Plaintiff Twitter is a Delaware corporation with its principal place of business in San Francisco, California. ECF No. 1 ¶ 7. Twitter "operates a global Internet platform for public self-expression and conversation in real time." *Id.* ¶ 8. Twitter uses and sells "messaging services using messaging application software and/or equipment, servers and/or gateways that route messages to computing devices such as smartphones, tablet computers, and personal computers." *VoIP-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1117 (N.D. Cal. 2019) (quotation omitted).

Defendant VoIP-Pal is a Nevada corporation with its principal place of business in Bellevue, Washington. ECF No. 1 ¶ 8. Defendant owns a portfolio of patents relating to Internet Protocol based communication. *VoIP-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 930 (N.D. Cal. 2019).

### B. The 2016 Cases

On February 9, 2016, Defendant sued Apple in the District of Nevada for infringement of U.S. Patent Nos. 8,542,815 ("the '815 patent"), and 9,179,005 ("the '005 patent"), both of which relate to a system for routing calls between a caller and a callee over Internet Protocol. *VoIP-Pal.Com*, 375 F. Supp. 3d at 1118, 1122. The following day, Defendant sued Verizon and AT&T in the District of Nevada for infringement of the same patents. *Id.* On October 6, 2016, Defendant sued Plaintiff in the District of Nevada for infringement of the same patents. *Id.* at 1121. The District of Nevada stayed the cases pending *inter partes* review. *Id.*

After the stays were lifted, on February 28, 2018, Plaintiff moved to change venue to the Northern District of California. *VoIP-Pal.Com, Inc. v. Twitter, Inc.*, Case No. 16-CV-02338, 2018 WL 3543031, at *1 (D. Nev. July 23, 2018). On July 23, 2018, the District of Nevada granted

United States District Court
Northern District of California

Plaintiff's motion for change of venue. *Id.* On October 1, 2018, the District of Nevada granted

Verizon and Defendant's stipulation to transfer the case. *VoIP-Pal.Com*, 375 F. Supp. 3d at 1121.

On October 4, 2018, the District of Nevada granted a similar stipulation by AT&T and Defendant.

*Id.* The following day, the District of Nevada granted a similar stipulation by Apple and

Defendant. *Id.* As a result, all four cases were transferred to this Court, where they were

consolidated.

On March 25, 2019, this Court granted Apple, AT&T, Verizon, and Plaintiff's

consolidated motion to dismiss all four cases. *Id.* at 1117. In a 45-page order, the Court concluded

that the '815 and '005 patents were unpatentable under 35 U.S.C. § 101. *Id.* at 1138, 1144. On

March 16, 2020, the Federal Circuit affirmed this Court's decision. *VoIP-Pal.Com, Inc. v. Apple,*

*Inc.*, 798 F. App'x 644, 645 (Fed. Cir. 2020). On May 18, 2020, the Federal Circuit denied

Defendant's petition for panel or en banc rehearing. *VoIP-Pal.Com, Inc. v. Twitter*, Case No.

2019-1808, ECF No. 99.

**C. The 2018 Cases**

On May 24, 2018, Defendant sued Apple in the District of Nevada for infringement of four

more patents: U.S. Patent Nos. 9,537,762 ("the '762 patent"); 9,813,330 ("the '330 patent");

9,826,002 ("the '002 patent"); and 9,948,549 ("the '549 patent"). *VoIP-Pal.Com*, 411 F. Supp. 3d

at 934. Like the two patents that were the subject of the 2016 Cases, these four patents relate to a

system for routing communications over Internet Protocol. *Id.* at 931. On June 15, 2018,

Defendant sued Amazon in the District of Nevada for infringement of the same patents. *Id.* The

lawsuits against Apple and Amazon were transferred from the District of Nevada to this Court,

where they were consolidated and related to the 2016 cases. *Id.*

On November 1, 2019, this Court granted Apple and Amazon's consolidated motion to

dismiss both cases with prejudice. *Id.* at 930. Just as with the 2016 Cases, the Court concluded, in

a 68-page order, that the four patents were unpatentable under 35 U.S.C. § 101. *Id.* at 941. On

November 3, 2020, the Federal Circuit affirmed this Court's decision. *VoIP-Pal.Com, Inc. v.*

*Apple, Inc.*, 828 F. App'x 717, 717 (Fed. Cir. 2020). If Defendant chooses to petition for

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1  rehearing, the petition is due on December 17, 2020. *See* Order, *VoIP-Pal.Com, Inc. v. Apple, Inc.*,

2  Case No. 2020-1241 (Fed. Cir. Nov. 9, 2020). If Defendant chooses to petition the United States

3  Supreme Court for a writ of certiorari, Defendant's petition is due on April 3, 2021. *See* Order,

4  March 19, 2020 (ordering that "the deadline to file any petition for a writ of certiorari due on or

5  after the date of this order is extended to 150 days from the date of the lower court judgment").

6      **D.  The Texas Cases**

7         In April of 2020, Defendant sued Apple, AT&T, Verizon, Amazon, Facebook, and Google

8  in the Waco Division of the Western District of Texas for infringement of the '606 patent. *VoIP-*

9  *Pal.Com, Inc. v. Facebook, Inc.*, Case No. 20-CV-00267-ADA, ECF No. 1 (W.D. Tex. Apr. 2,

10  2020); *VoIP-Pal.Com, Inc. v. Google LLC*, Case No. 20-CV-00269-ADA, ECF No. 1 (W.D. Tex.

11  Apr. 3, 2020); *VoIP-Pal.Com, Inc. v. Amazon.Com, Inc.*., Case No. 20-CV-00272-ADA, ECF No.

12  1 (W.D. Tex. Apr. 6, 2020);  *VoIP-Pal.Com, Inc. v. Apple Inc.*, Case No. 20-CV-00275-ADA,

13  ECF No. 1 (W.D. Tex. Apr. 7, 2020);  *VoIP-Pal.Com, Inc. v. AT&T Inc.*, Case No. 20-CV-00325-

14  ADA, ECF No. 1 (W.D. Tex. Apr. 24, 2020); *VoIP-Pal.Com, Inc. v. Verizon Comms., Inc.*, Case

15  No. 20-CV-00275-ADA, ECF No. 1 (W.D. Tex. Apr. 24, 2020). Like the six patents that were the

16  subjects of the 2016 and 2018 Cases, the '606 patent relates to a system for routing

17  communications over Internet Protocol. Specifically, the '606 patent shares a common

18  specification, title, parent application, inventors, and owner with Defendants' six other patents that

19  were examined by this Court in the 2016 and 2018 cases. *Compare* ECF No. 1-1 *with VoIP-*

20  *Pal.Com, Inc. v. Apple Inc.*, Case No. 18-CV-06217-LHK, ECF No. 1-2.

21         On September 29, 2020, Judge Alan Albright of the Western District of Texas stayed the

22  six cases pending before him until this Court enters an order on the instant motion to dismiss and

23  the consolidated motion to dismiss in three related declaratory judgment actions, *Apple, Inc. v.*

24  *VoIP-Pal.com, Inc.*, Case No. 20-CV-02460-LHK; AT&T, Inc. v. *VoIP-Pal.com, Inc.*, Case No.

25  20-CV-02995-LHK; and *Cellco Partnership, Inc.* v. *VoIP-Pal.com, Inc.*, Case No. 20-CV-03092-

26  LHK. *See VoIP-Pal.Com, Inc. v. Facebook, Inc.*, Case No. 20-CV-00267-ADA, ECF No. 47

27  (W.D. Tex. Apr. 2, 2020).

28

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

### E. The Instant Case

On April 8, 2020, six days after Defendant started filing lawsuits in the Western District of Texas that alleged infringement of the '606 patent, Plaintiff sued Defendant for a declaration of non-infringement of the '606 patent in the Northern District of California. ECF No. 1. On April 21, 2020, this Court granted Plaintiff's motion to relate its declaratory judgment action to the 2016 case against Plaintiff. ECF No. 14.

Shortly after Plaintiff filed the instant case, the other three defendants in the 2016 cases (Apple, AT&T, and Verizon) also filed declaratory judgment actions in the Northern District of California for a declaration of non-infringement and invalidity of the '606 patent. Case No. 20-CV-02460-LHK, ECF No. 1; Case No. 20-CV-02995-LHK, ECF No. 1; Case No. 20-CV-03092-LHK, ECF No. 1. On April 14, 2020, Apple amended its complaint to also seek a declaration of non-infringement and invalidity of the '872 patent. Case No. 20-CV-02460, ECF No. 10. The Court then related Apple, AT&T, and Verizon's cases to Defendant's 2016 cases against them, just as the Court had done in the instant case. Case No. 20-CV-02460-LHK, ECF No. 18; Case No. 20-CV-02995-LHK, ECF No. 23; Case No. 20-CV-03092-LHK, ECF No. 18.

On May 26, 2020, this Court related the instant case to the Apple, AT&T, and Verizon cases. ECF No. 24. On June 4, 2020, this Court consolidated the motion to dismiss briefing for the Apple, AT&T, and Verizon cases but ordered that the motion to dismiss in the instant case be briefed separately. ECF No. 26.

On July 10, 2020, Defendant filed a consolidated motion to dismiss the Apple, AT&T, and Verizon cases. Case No. 20-CV-02460-LHK, ECF No. 32. On December 11, 2020, this Court denied Defendant's consolidated motion to dismiss. Case No. 20-CV-02460-LHK, ECF No. 60. The Court concluded that there was personal jurisdiction over Defendant because Defendant had purposefully directed its enforcement activities towards the forum state by litigating six lawsuits in this district. *Id.* at 17–20. The Court also concluded that it would be reasonable and fair to assert personal jurisdiction over Defendant. *Id.* at 20–23. Because the Court found that there was personal jurisdiction over Defendant, the Court found that venue was proper in this district. *Id.* at

23. Finally, the Court concluded that there was subject matter jurisdiction over Apple's claim of non-infringement and invalidity of the '872 patent because Defendant had engaged in an affirmative act sufficient to confer jurisdiction— Defendant's prior litigation against Apple and Defendant's statement that Defendant would continue to litigate until Defendant achieved monetization for Defendant's shareholders. *Id.* at 25–26.

On June 26, 2020, Plaintiff filed an amended complaint. ECF No. 29. Like Plaintiff's original complaint, the amended complaint sought a declaration of non-infringement of the '606 patent. *Id.* ¶¶ 35–40. However, the amended complaint also sought a declaration of invalidity of the '606 patent. *Id.* ¶¶ 41–46. In addition, the amended complaint included additional facts that had arisen since Plaintiff filed its original complaint, including: (1) Defendant filing lawsuits asserting infringement of the '606 patent against AT&T and Verizon in the Western District of Texas; and (2) Plaintiff asking Defendant whether Defendant would be willing to grant Plaintiff a covenant not to sue based on the '606 patent. *Id.* ¶¶ 5, 16–17.

On July 10, 2020, Defendant filed a motion to dismiss the instant case. ECF No. 31 ("Mot."). On July 31, 2020, Plaintiff filed an opposition. ECF No. 36 ("Opp'n"). On August 14, 2020, Defendant filed a reply. ECF No. 37 ("Reply).

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(1)

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. While lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

1    Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

2    favor, the court determines whether the allegations are sufficient as a legal matter to invoke the

3    court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "[I]n a factual

4    attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves,

5    would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In

6    resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint

7    without converting the motion to dismiss into a motion for summary judgment." *Id.* The Court

8    "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.*

9        Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule

10   12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v.*

11   *State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

12       **B.  Motion to Dismiss Under Rule 12(b)(2)**

13       In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure

14   12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the

15   burden of establishing that jurisdiction exists. *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th

16   Cir. 2019). "Where, as here, the defendant's motion is based on written materials rather than an

17   evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to

18   withstand the motion to dismiss.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)

19   (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).

20       However, this standard "is not toothless," and the party asserting jurisdiction "cannot

21   simply rest on the bare allegations of its complaint." *In re Boon Global Ltd.*, 923 F.3d at 650

22   (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Thus,

23   courts may consider declarations and other evidence outside the pleadings to determine whether it

24   has personal jurisdiction. *See id.* At this stage of the proceeding, "uncontroverted allegations in

25   plaintiff's complaint must be taken as true, and '[c]onflicts between parties over statements

26   contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger*,

27   374 F.3d at 800).  On the other hand, courts "may not assume the truth of allegations in a pleading

28

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

### C. Motion to Dismiss Under Rule 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a complaint for improper venue. Once the defendant has challenged the propriety of venue in a given court, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When considering a motion to dismiss for improper venue, a court may consider facts outside of the pleadings. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

Pursuant to 28 U.S.C. § 1406(a), if the court determines that venue is improper, the court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought. Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### D. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

## III. DISCUSSION

Defendant moves to dismiss the instant case for three reasons: (1) this Court lacks subject matter jurisdiction over the instant case; (2) this Court lacks personal jurisdiction over Defendant; and (3) venue is improper. Mot. at 4–10. The Court addresses each argument in turn.

### A. Subject Matter Jurisdiction

Defendant first argues that this Court lacks subject matter jurisdiction over the instant case. Mot. at 4–7. Defendant's argument stems from the fact that Defendant has not yet sued Plaintiff for infringement of the '606 patent.

Generally, dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "is a procedural question not unique to patent law," and is therefore governed by regional circuit law. *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002). However, "[w]hether an actual case or controversy exists so that a district court may entertain an action for declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *3M Co v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

The Declaratory Judgment Act states that, "[i]n the case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party in seeking such declaration." 28 U.S.C. § 2201(a). The phrase "actual controversy" refers to "cases" and "controversies" that are justiciable under Article III of the Constitution. *Assoc. for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *rev'd in part on other grounds by Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013). Thus, without a case or controversy, there cannot be a claim for declaratory relief. *ActiveVideo Networks*, 975 F. Supp. at 1086.

The Court has subject matter jurisdiction in a declaratory judgment action when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Under the

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

1    "all the circumstances" test, courts have "unique and substantial discretion in deciding whether to

2    declare the rights of litigants." *Id.* at 136.

3            In case law following *MedImmune*, the Federal Circuit has explained that, in the context of

4    patent disputes, an actual controversy requires "an injury in fact traceable to the patentee," which

5    requires "both (1) an affirmative act by the patentee related to the enforcement of his patent rights

6    and (2) meaningful preparation to conduct potentially infringing activity." *Assoc. for Molecular*

7    *Pathology*, 689 F.3d at 1318. In the instant case, the parties do not dispute the second factor

8    because Apple already markets the products and services at issue. Opp'n at 18.

9            In order to meet the affirmative act requirement, "more is required than 'a communication

10   from a patent owner to another party, merely identifying its patent and the other's product line.'

11   [But] [h]ow much more is required is determined on a case-by-case analysis." *3M*, 673 F.3d at

12   1378–79. In *Cepheid v. Roche Molecular Systems, Inc.*, another court in this district listed factors

13   that the Federal Circuit and Supreme Court have generally considered in determining whether the

14   patentee has taken an affirmative act: (1) the strength of threatening language in communications

15   between the parties; (2) the depth and extent of infringement analysis conducted by the patent

16   holder; (3) whether the patent holder imposed a deadline to respond; (4) any prior litigation

17   between the parties; (5) the patent holder's history of enforcing the patent at issue; (6) whether the

18   patent holder's threats have induced the alleged infringer to change its behavior; (7) the number of

19   times the patent holder has contacted the alleged infringer; (8) whether the patent holder is a

20   holding company with no income other than enforcing patent rights; (9) whether the patent holder

21   refused to give assurance it will not enforce the patent; (10) whether the patent holder has

22   identified a specific patent and specific infringing products; (11) the extent of the patent holder's

23   familiarity with the product prior to suit; (12) the length of time that transpired after the patent

24   holder asserted infringement; and (13) whether communications initiated by the plaintiff appear as

25   an attempt to create a controversy. *ActiveVideo*, 975 F. Supp. 2d at 1087–88 (citing *Cepheid v.*

26   *Roche Molecular Systems, Inc.*, Case No C-12-4411 EMC, 2013 WL 184125, at *6 (N.D. Cal. Jan.

27   17, 2013)).

28

10

United States District Court
Northern District of California

1    Before determining whether Defendant has engaged in an affirmative act sufficient to

2  confer jurisdiction over Plaintiff's declaratory judgment claims, the Court addresses what

3  complaint should be used to make this assessment. As explained above, Plaintiff filed its original

4  complaint on April 8, 2020 and an amended complaint on June 26, 2020. Although the original

5  complaint sought a declaration of non-infringement of the '606 patent, the amended complaint

6  sought a declaration of non-infringement and invalidity of the '606 patent. ECF No. 29 ¶¶ 35–46.

7  In addition, the amended complaint included additional facts that had arisen since Plaintiff filed its

8  original complaint, including: (1) Defendant filing lawsuits asserting infringement of the '606

9  patent against AT&T and Verizon in the Western District of Texas; and (2) Plaintiff asking

10  Defendant whether Defendant would be willing to grant Plaintiff a covenant not to sue based on

11  the '606 patent. *Id.* ¶¶ 16–17.

12    Defendant argues that subject matter jurisdiction must be assessed at the time that Plaintiff

13  filed its original complaint. However, "when a plaintiff files a complaint in federal court and then

14  voluntarily amends the complaint, courts look to the amended complaint to determine

15  jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007). In the instant

16  case, Plaintiff voluntarily amended its complaint to add additional facts that transpired since the

17  filing of the original complaint. Accordingly, the Court uses Plaintiff's amended complaint to

18  determine whether Defendant engaged in an affirmative act sufficient to confer jurisdiction over

19  Plaintiff's declaratory judgment claims.

20    Analyzing "all the circumstances," the Court concludes that Defendant engaged in an

21  affirmative act sufficient to confer jurisdiction over Plaintiff's declaratory judgment claims.

22  *MedImmune, Inc.*, 549 U.S. at 127. The Court comes to this conclusion based primarily on

23  Defendant's prior litigation against Plaintiff; Defendant's current '606 patent litigation against all

24  the other defendants in the 2016 cases; and Defendant's statements about its intentions with

25  respect to asserting its patent rights.

26    The Federal Circuit has repeatedly held that prior litigation on related patents can be an

27  affirmative act that supports subject matter jurisdiction over a declaratory judgment claim. *See*

28

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

1   *Arkema*, 706 F.3d at 1358 (concluding that prior litigation was a "sufficient affirmative act on the

2   part of the patentee for declaratory judgment purposes"); *Danisco*, 744 F.3d 1331 ("[A] history of

3   patent litigation between the same parties involving related technologies, products, and patents is

4   another circumstance to be considered, which may weigh in favor of the existence of subject

5   matter jurisdiction."); *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1344

6   (Fed. Cir. 2007) ("[R]elated litigation involving the same technology and the same parties is

7   relevant in determining whether a justiciable declaratory judgment controversy exists on other

8   related patents.").

9     The Court concludes that Defendant's prior litigation weighs heavily in favor of a finding

10  that Defendant has engaged in an affirmative act related to the enforcement of its patent rights.

11  Specifically, Defendant previously filed lawsuits in 2016 against Plaintiff, Apple, AT&T, and

12  Verizon for infringement of patents that share a common specification, title, parent application,

13  inventors, and owner with the '606 patent. Defendant also filed lawsuits in 2018 against Apple and

14  Amazon for infringement of patents that share a common specification, title, parent application,

15  inventors, and owner with the '606 patent. Defendant then sued Apple, AT&T, and Verizon—all

16  the defendants in the 2016 cases except for Plaintiff—for infringement of the '606 patent. The

17  Court concludes that, under these circumstances, Plaintiff did not need to wait for Defendant to

18  sue Plaintiff for infringement of the '606 patent.

19    Furthermore, Defendant has publicly stated that it will continue to assert its patent rights

20  until it is successful. In an April 8, 2020 press release, which was issued after the dismissal of

21  Defendant's first lawsuit was affirmed by the Federal Circuit and immediately after Defendant

22  filed its most recent lawsuits, Defendant's CEO stated:

23      [W]e are undeterred in our fight to assert our intellectual property
    rights. . . . I can tell you; we are not finished . . . We remain firm in

24      our resolve to achieve monetization for our shareholders and will
    continue to see this fight through until a successful resolution is

25      reached.

26  ECF No. 1-7; ECF No. 29-7. Although the Court does not find this statement sufficient to

27  demonstrate an affirmative act on its own, the statement provides helpful context as to

28  

                     12

1    Defendant's intentions with respect to asserting its patent rights.[1]

2           Assessing "all the circumstances," the Court concludes that Defendant has engaged in an

3    affirmative act related to the enforcement of its patent rights based on Defendant's extensive

4    history of litigation and Defendant's statement that Defendant would continue to litigate until

5    Defendant achieved monetization for Defendant's shareholders. *See Monolithic Power Sys.*, No. C

6    07-2363 CW, 2007 WL 2318924, at *3 (N.D. Cal. Aug. 13, 2007) ("[T]he assertion of rights,

7    evidenced through a prior lawsuit between the same parties regarding the same technology . . . and

8    solidified through the express press release statement indicating an intent to sue alleged patent

9    infringers, presents enough evidence to establish the case or controversy required for declaratory

10   judgment jurisdiction."). Thus, the Court has subject matter jurisdiction over Plaintiff's claim for a

11   declaration of non-infringement and invalidity of the '606 patent.[2]

12   **B.  Personal Jurisdiction**

13          Defendant next moves to dismiss the instant case because the Court lacks personal

14   jurisdiction over Defendant in this district, where Plaintiff is headquartered. Mot. at 7–9.

15   Defendant made the same argument in the three declaratory judgment actions that were filed by

16

17   _____

[1] In addition, the Court finds relevant context in the discussions between the parties since the filing
18   of the instant case. After the instant case was filed, Plaintiff asked Defendant whether Defendant
     would be willing to grant Plaintiff a covenant not to sue based on the '606 patent. Defendant
19   responded as follows:

20          VoIP-Pal's position is that Twitter's declaratory judgment complaint lacked subject matter
            jurisdiction at the time it was filed and therefore should be dismissed. Accordingly, VoIP-
21          Pal does not believe that a covenant not to sue needs to be discussed under the
            present circumstances. This response should not be construed as a refusal to grant a covenant not to
22          sue.

     ECF No. 29 ¶ 17.
23   [2] In the motion to dismiss, Defendant emphasizes that Defendant has not made a specific threat to
     Plaintiff regarding the '606 patent. Mot. at 6. However, at a case management conference in the
24   2016 cases, in which Plaintiff was a defendant, Defendant represented to this Court that Defendant
     did not intend to file additional lawsuits. Case No. 18-CV-04563, ECF No. 68 (The Court:
25   "Are we just going to keep getting more continuations and then are you going to assert those four
     continuations against the other Defendants here?" Counsel: "Your Honor, at this time there's no
26   intention to assert any of the other patents against any of the other defendants. I can't promise you
     that that would never change, but that is not the current intent."). Despite these representations,
27   Defendant chose to file additional lawsuits against all of the defendants in the 2016 cases, except
     for Plaintiff.

28                                                      13
     Case No. 20-CV-02397-LHK
     ORDER DENYING MOTION TO DISMISS

1    Apple, AT&T, and Verizon. Case No. 20-CV-02460, ECF No. 32 at 15–17. The Court concluded

2    that personal jurisdiction existed over Defendant in those three cases. ECF No. 60 at 14–23. The

3    Court comes to the same conclusion in the instant case.

4        The Court applies Federal Circuit law to the question of whether the Court has personal

5    jurisdiction over Plaintiff's non-infringement claims because "the jurisdictional issue is

6    'intimately involved with the substance of the patent laws.'" *Avocent Huntsville Corp. v. Aten Int'l

7    Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.

8    Cir. 1995)). "Determining whether personal jurisdiction exists over an out-of-state defendant

9    involves two inquiries: whether a forum state's long-arm statute permits service of process, and

10   whether the assertion of personal jurisdiction would violate due process." *Avocent*, 552 F.3d at

11   1329 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)).

12       California's long arm statute, Cal. Civ. Proc. Code § 410.10, is co-extensive with federal

13   due process requirements, and therefore the jurisdictional analyses under California law and

14   federal due process merge into one. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state

15   may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the

16   United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)

17   ("California's long-arm statute . . . is coextensive with federal due process requirements, so the

18   jurisdictional analyses under state law and federal due process are the same.").

19       For a court to exercise personal jurisdiction over a defendant consistent with due process,

20   that defendant must have "certain minimum contacts" with the relevant forum "such that the

21   maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

22   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457,

23   463 (1940)).

24       A court may exercise either general or specific jurisdiction over a defendant. *Avocent.*, 552

25   F.3d at 1330. "To be subject to general jurisdiction, a defendant business entity must maintain

26   'continuous and systematic general business contacts' with the forum, even when the cause of

27   action has no relation to those contacts." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de*

28

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

*Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (quotation omitted). In the instant case, Plaintiff does not argue that Defendant is subject to general jurisdiction in this forum. Accordingly, the Court considers whether the Court has specific jurisdiction over Defendant.

Specific jurisdiction is appropriate when a suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). To determine whether a court can exercise specific jurisdiction consistent with due process, the Federal Circuit considers: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). "The first two factors correspond with the minimum contacts prong of the [International Shoe] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed*, 249 F.3d at 1360. The Court initially considers the first two factors. The Court then considers the third factor.

### 1. Whether the Defendant Purposefully Directed Its Activities at Residents of the Forum, and Whether the Claim Arises Out of or Relates to Those Activities

The first two factors require the Court to determine whether the defendant purposefully directed its activities at residents of the forum, and whether the claim arises out of or relates to those activities. *Xilinx*, 848 F.3d at 1353. With respect to the first factor, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). As to the second factor, "the court must determine whether 'the suit aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011)).

The plaintiff has the burden of establishing these two factors. *Elecs. for Imaging v. Coyle*,

1  340 F.3d 1344, 1350 (Fed. Cir. 2003). "Without discovery and a record on jurisdiction, [the Court]

2  must resolve all factual disputes in the plaintiff's favor." *Nuance Comms., Inc. v. Abbyy Software*

3  *House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). "[W]here the plaintiff's factual allegations are not

4  directly controverted, [they] are taken as true for purposes of determining jurisdiction." *Id.*

5  (quoting *Akro*, 45 F.3d at 1543). "To survive a motion to dismiss in the absence of jurisdictional

6  discovery, plaintiffs need only make a prima facie showing of jurisdiction." *Id.*

7        When the plaintiff is bringing a declaratory judgment for non-infringement, the claim

8  "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents

9  in suit." *Avocent*, 552 F.3d at 1332. "The relevant inquiry for specific personal jurisdiction then

10  becomes to what extent has the defendant patentee 'purposefully directed [such enforcement

11  activities] at residents of the forum,' and the extent to which the declaratory judgment claim

12  'arises out of or relates to those activities.'" *Id.* (quoting *Breckenridge Pharm., Inc. v. Metabolite*

13  *Labs*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)). "A declaratory judgment claim arises out of the

14  patentee's contacts with the forum state only if those contacts 'relate in some material way to the

15  enforcement or the defense of the patent.'" *Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d

16  1134, 1138 (Fed. Cir. 2018) (quoting *Avocent*, 552 F.3d at 1336).

17        Under Federal Circuit law, "ordinary cease-and-desist notices sent by a patentee to an

18  alleged infringing party in a different state are not sufficient to subject the patentee to specific

19  jurisdiction in that state." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).

20  "The crux of the due process inquiry should focus first on whether the defendant has had contact

21  with parties in the forum state beyond the sending of cease and desist letters." *Breckenridge*, 444

22  F.3d at 1366. Indeed, "certain other patent enforcement actions, taken in conjunction with the

23  issuance of cease-and-desist letters, are sufficient to support specific jurisdiction." *Id.* "Examples

24  of these 'other activities' include initiating judicial or extrajudicial patent enforcement within the

25  forum, or entering into an exclusive license agreement or other undertaking which imposes

26  enforcement obligations with a party residing or regularly doing business in the forum." *Avocent*,

27  552 F.3d at 1334. These activities need not be directed towards parties in the lawsuit. *Id.*

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

1    In the instant case, the Court concludes that Defendant has purposefully directed its

2  enforcement activities towards the forum state, including Plaintiff, which is headquartered in this

3  district, by: (1) litigating the 2016 and 2018 cases, which included six lawsuits on claims of

4  infringement of patents in the same family, in the Northern District of California; (2) stipulating to

5  transfer five of those six lawsuits to this district; (3) never contesting personal jurisdiction in the

6  Northern District of California in those six lawsuits; (4) engaging multiple California law firms in

7  its infringement lawsuits; and (5) meeting with Apple in the Northern District of California in

8  2016 regarding claims of infringement of patents in the same family. The Court first considers

9  Defendant's litigation efforts in this district and then considers Defendant's meetings with Apple.

10    First, the fact that a defendant "has engaged in judicial patent enforcement (with respect to

11  the patents at issue or a related patent)" in the same district can support personal jurisdiction.

12  *ActiveVideo Networks, Inc. v. TransVideo Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1097–98 (N.D. Cal.

13  2013); *see also Avocent*, 552 F.3d at 1338–39 (noting that a lawsuit in the same forum on the same

14  patent "is a significant contact with the forum materially related to the enforcement of the relevant

15  patent"). For example, another court in this district found that a defendant had purposefully

16  directed its activities to the forum by litigating six cases in this district "regarding the very same or

17  related patents." *Id.* at 1096–97. Furthermore, the District of New Jersey found that a defendant

18  had purposefully directed its activities to the forum by suing other defendants in that district for

19  patent infringement. *Pro Sports Inc. v. West*, 639 F. Supp. 2d 475, 481 (D.N.J. 2009). In addition,

20  the District of Maryland concluded that personal jurisdiction existed when a defendant had filed "a

21  prior suit against [the plaintiff in the district] with respect to related patents." *Neuralstem, Inc. v.

22  StemCells, Inc.*, 573 F. Supp. 2d 888, 898 (D. Md. 2008).[3]

23  _____

24  [3] In *Xilinx*, the Federal Circuit stated: "We have considered forum-related activities of the patentee
    with respect to the patents in suit that do not necessarily relate to the particular controversy, such
25  as exclusive licensing, though at the same time we have (appropriately) rejected the existence of
    contacts concerning other patents as being pertinent to the minimum contacts analysis." *Xilinx*,
26  848 F.3d at 1353. However, *Xilinx* itself did not raise the question of whether courts can consider
    litigation involving other patents. Moreover, this statement is not specific to litigation involving
27  related patents, like the patents at issue here.

28  _____

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    Accordingly, Defendant's act of litigating the 2016 and 2018 cases, which included six
2    lawsuits regarding related patents, in this district demonstrates that Defendant has purposefully
3    directed its enforcement activities towards the forum state. Defendant points out that, unlike in
4    *ActiveVideo*, *Pro Sports*, and *Neuralstem*, Defendant did not file its infringement lawsuits in this
5    district—rather, Defendant filed in Nevada and opposed Plaintiff's motion to transfer to this
6    district. However, Defendant stipulated to transfer its infringement lawsuits against Apple,
7    Verizon, and AT&T to this district. Defendant then litigated those cases in this district without
8    contesting personal jurisdiction.

9    Furthermore, even if Defendant had not stipulated to transfer five of its lawsuits to this
10   district, Defendant still would have purposefully availed itself of the courts in California because
11   Defendant continued to prosecute its six lawsuits in this district. In *Kyocera Communications v.*
12   *Potter Voice Technologies*, the district court relied on this same reasoning. Case No. 13-CV-0766-
13   H, 2013 WL 2456032, at *3 (S.D. Cal. June 5, 2013). In that case, the defendant had initially
14   brought suit in Colorado and opposed transfer to California. *Id.* The district court nonetheless
15   concluded that the defendant had purposefully availed itself of the California courts because the
16   defendant had continued prosecuting the lawsuit in California. *Id.* The instant cases more strongly
17   support a finding of personal jurisdiction because Defendant stipulated to transfer five of its
18   lawsuits to this district. Accordingly, the Court concludes that Defendant's infringement litigation,
19   involving substantially similar technology and accused products as well as six patents from the
20   same family that share a common specification, title, parent application, inventors, and owner as
21   the patents at issue here, demonstrates that Defendant purposefully directed its enforcement
22   activities towards this district.

23   In addition, the Court notes that Defendant has engaged California lawyers for the 2016
24   and 2018 cases, as well as the instant cases. Courts have found that defendants purposefully
25   directed their enforcement activities to the forum state by hiring lawyers from that state to
26   prosecute their infringement actions. *See, e.g.*, *Elecs. for* Imaging, 340 F..3d at 1351 (concluding
27   that the defendant purposefully directed its activities to California by hiring a California lawyer);

28
18

1   *Kyocera*, 2013 WL 2456032, at *3 (concluding that the defendant had purposefully directed its

2   enforcement activities to California because the defendant was suing California residents for

3   infringement and had "retained counsel in California for that lawsuit"). The Court comes to the

4   same conclusion in the instant case.

5          Furthermore, beyond its lawsuits in this district, Defendant has made efforts to enforce its

6   family of patents in this district. For example, Defendant's representative met with Apple in

7   Sunnyvale, California, located in this district, regarding Apple's potential infringement of

8   Defendant's patents. Case No. 20-CV-02460, ECF No. 43-40 ¶ 2. "As the Supreme Court has

9   explained, 'physical entry into the State—either by the defendant in person or through an agent,

10   goods, mail, or some other means—is certainly a relevant contact." *Xilinx*, 848 F.3d at 1354

11   (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *see also Synthes (U.S.A.) v. G.M. Dos Reis*

12   *Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297–98 (Fed. Cir. 2009) (concluding that a

13   defendant's representatives' entrance into the forum to attend a trade show with products that

14   allegedly infringed the plaintiff's patents constituted a relevant contact for the purposes of

15   personal jurisdiction). So too here.[4]

16          In sum, the Court concludes that Defendant has undertaken substantial enforcement

17   activities in California, including prosecuting their six lawsuits for infringement of patents from

18   the same family, retaining counsel in California to prosecute their lawsuits, and meeting with

19   Apple in California regarding infringement of patents from the same family. "Far from being

20   random, fortuitous, or attenuated . . . the totality of these contacts sufficiently make out

21   [Plaintiffs'] case that [Defendant], by 'engag[ing] in significant in significant activities in

22   _____

23   [4] In addition to its meeting with Apple, Defendant likely investigated its infringement claims
    against Plaintiff and Apple, both of whom have their headquarters and reside in this district, and

24   that investigation would have also constituted purposefully directing enforcement activities at the
    forum. *See PharmaNet, Inc. v. DataSci Ltd. Liability Co.*, Case No. 08-2965, 2009 WL 396180, at

25   *13 (D.N.J. 2009) (concluding that there was personal jurisdiction because "it is likely that
    Defendant took steps to investigate and compile its case against [a company in the forum] prior to

26   the suit's filing in order to comply with it[s] obligations under Federal Rule of Civil Procedure

27   11(b)).

28

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   California . . . purposefully directed [its] activities to California." *Elecs. for Imaging*, 340 F.3d at

2   1351.

3          Finally, the claim at issue in the instant cases arises out of or relates to these activities

4   because the activities described above relate to enforcement of patents from the same family.

5   *Avocent*, 552 F.3d at 1330. Although Defendant points out that not all these activities relate to the

6   enforcement of the patents at issue in this case, the Court points out that courts have found

7   personal jurisdiction even where the enforcement activities were tied to related patents.

8   *ActiveVideo*, 975 F. Supp. 2d at 1097–98 (concluding that there was personal jurisdiction over the

9   defendant based on the defendant's previous infringement lawsuits in the district with respect to

10  the patents at issue or a related patent); *NeuralStem*, 573 F. Supp. 2d at 898 (finding that there was

11  personal jurisdiction over the defendant because the defendant voluntarily filed infringement cases

12  in the district with respect to highly related patents). The patent in the instant case shares a

13  common specification, title, parent application, inventors, and owner with Defendants' six patents

14  in the 2016 and 2018 cases before this Court. Moreover, the 2016 and 2018 and instant case share

15  substantially similar technology and accused products. Accordingly, the Court concludes that

16  Plaintiff has made a prima facie showing on the first two factors, as required for specific

17  jurisdiction.

18          **2.   Whether Assertion of Personal Jurisdiction is Reasonable and Fair**

19          The Court next considers whether the assertion of personal jurisdiction is reasonable and

20  fair. The reasonableness inquiry "is not limited to the specific facts giving rise to, or relating to,

21  the particular litigation." *Xilinx*, 848 F.3d at 1355. For the reasonableness inquiry, the burden is on

22  the defendant, who must "present a compelling case that the presence of some other considerations

23  would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court

24  in *Burger King* [*Corporation v. Rudewicz*, 471 U.S. 462, 475–77 (1985)]." *Breckenridge*, 444 F.3d

25  1356, 1363 (Fed. Cir. 2006). The five factors outlined in *Burger King* include: (1) the burden on

26  the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest

27  in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining

28

20

1    the most efficient resolution of controversies; and (5) the shared interest of the several States in

2    furthering fundamental substantive social policies. *Avocent*, 552 F.3d at 1331 (citing *Burger King*,

3    471 U.S. at 475–77). The Court addresses each factor in turn.

4           First, Defendant would incur a minimal burden of litigating in this district. Defendant is

5    based in Washington, and several of its executives are located near the West Coast, in Washington

6    and Utah. ECF No. 1 ¶ 9; Case No. 20-CV-02460, ECF No. 43-36. Accordingly, only minimal

7    travel is required to get to Northern California.

8           Moreover, the Federal Circuit has repeatedly concluded that a defendant's previous

9    lawsuits in a forum demonstrates that the defendant would not face an undue burden in litigating

10   there. *See Xilinx*, 848 F.3d at 1357–58 (explaining that "[t]he lack of significant burden on [the

11   defendant] is also evidenced by [the defendant's] prior litigations in California itself," including

12   seven patent infringement lawsuits there); *Acorda Therapeutics Inc. v. Mylan Pharma. Inc*, 817

13   F.3d 755, 764 (Fed. Cir. 2016) (concluding that the burden on defendant "will be at most modest,

14   as [the defendant] . . . has litigated many . . . lawsuits" in the forum); *Viam Corp. v. Iowa Exp.-*

15   *Imp. Trading Co.*, 84 F.3d 424, (Fed. Cir. 1996) (concluding that litigation in California was not

16   unduly burdensome because the defendant had filed previous lawsuits in California). In the instant

17   case, Defendant has prosecuted six lawsuits in this district. Thus, the Court concludes that

18   litigating the instant case would not be unduly burdensome.

19          The Federal Circuit has also concluded that litigation in a forum would not be unduly

20   burdensome when the defendant has traveled to that forum. *See Xilinx*, 848 F.3d at 1357 (finding

21   that a defendant corporation based in Germany would have a minimal burden of litigating in

22   California because the defendant's representatives had traveled to California). Defendant's

23   representative previously traveled to California. Accordingly, the Court concludes that Defendant

24   would incur a minimal burden by litigating in this district, so the first factor does not weigh

25   against a finding of personal jurisdiction.

26          As to the second factor, "California has a substantial interest in protecting its residents

27   from unwarranted claims of patent infringement." *Elecs. for Imaging*, 340 F.3d at 1352. Plaintiff

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS

1    has its principal place of business in California. Thus, the second factor weighs in favor of

2    personal jurisdiction.

3           On the third factor, Plaintiff also has "an undisputed interest in protecting itself from patent

4    infringement." *Id*. Plaintiff, which has its principal place of business in California, "indisputably

5    has an interest in protecting itself from patent infringement by obtaining relief 'from a nearby

6    federal court' in its home forum." *Xilinx*, 848 F.3d at 1356. Thus, the third factor weighs in favor

7    of personal jurisdiction.

8           On the fourth factor, the most efficient resolution of the instant cases would be possible in

9    this district. This Court has already presided over six cases alleging infringement of Defendant's

10   patents from the same family and written 113 pages of opinions analyzing Defendant's patents,

11   which were subsequently affirmed by the Federal Circuit. *See VoIP-Pal.Com*, 375 F. Supp. 3d at

12   1110, *aff'd*, 798 F. App'x at 645; *VoIP-Pal.Com, Inc*, 411 F. Supp. 3d at 926, *aff'd*, 828 F. App'x

13   at 717. Thus, the most efficient resolution of the instant case would be for it to be heard in this

14   Court, and the fourth factor weighs for personal jurisdiction.

15          Finally, on the fifth factor, "[t]here does not appear to be any conflict between the interests

16   of California and any other state, because 'the same body of federal patent law would govern the

17   patent invalidity claim irrespective of the forum.'" *Xilinx*, 848 F.3d at 1356 (quoting *Elecs. for*

18   *Imaging*, 340 F.3d at 1352). Thus, the fifth factor does not weigh against a finding of personal

19   jurisdiction.

20          In sum , Defendant "fail[s] to convince [this Court] that this is one of the 'rare' situations

21   in which sufficient minimum contacts exist but where the exercise of jurisdiction would be

22   unreasonable." *Elecs for Imaging*, 340 F.3d at 1352. Accordingly, the Court concludes that it has

23   personal jurisdiction over Defendant in the instant case.

24   **C. Venue**

25          Finally, Defendant argues that venue is improper. Mot. at 9–10. As with the personal

26   jurisdiction argument, Defendant made this argument in the three declaratory judgment cases that

27   were filed by Apple, AT&T, and Verizon. Case No. 20-CV-02460, ECF No. 32 at 17–18. The

28
                                                           22

Court concluded that venue was proper in those three cases. ECF No. 60 at 23. The Court comes to the same conclusion in the instant case.

Venue in declaratory judgment actions for non-infringement of a patent is governed by the general venue statute, 28 U.S.C. § 1391. Under § 1391(b)(1), venue is proper in any judicial district where a defendant resides. *Id.* § 1391(b)(1). Under § 1391(c)(2), for purposes of venue, a corporate defendant "reside[s] . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). Because the Court has personal jurisdiction over Defendant in the instant cases, venue is also proper in this district.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss Plaintiff's complaint.

**IT IS SO ORDERED.**

Dated: December 14, 2020

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

23

Case No. 20-CV-02397-LHK
ORDER DENYING MOTION TO DISMISS